UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARELENE AMARANTE,<br>4036 Hiawatha Dr SW<br>Knoxville, TN 37919<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br>500 12th Street SW<br>Washington, D.C. 20536<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 26-2039 |

## PLAINTIFF'S ORIGINAL COMPLAINT

1. Immigration and Customs Enforcement ("ICE") maintains a secret watchlist database of immigration attorneys. The watchlist was discovered in November 2025 by immigration attorney and law professor Arlene Amarante while using ICE's Detention Facility Appointment Scheduler ("DFAS") platform to schedule a client visit. The watchlist contains the names and email addresses of immigration attorneys—including Plaintiff—selected for unknown law enforcement purposes. ICE has published no policy, staff instruction, or other record explaining the watchlist's creation, purpose, or inclusion criteria.

2. The ICE-ERO attorney watchlist database is built on ServiceNow, an enterprise IT platform. The watchlist's sole API user is the Export Enforcement Coordination Center ("E2C2"), ICE's dedicated interagency criminal law enforcement coordination node. Screenshots of the DFAS platform reveal that the watchlist facilitates information sharing regarding immigration attorneys between criminal law enforcement agencies having no conceivable connection to

civil immigration matters, including the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco and Firearms, the U.S. Postal Inspection Service, the Army Office of Special Investigations, the Defense Intelligence Agency, and others.

3. Immigration attorneys have no regular dealings with these criminal law enforcement agencies. There is no probable cause or other known legal basis for subjecting licensed immigration attorneys to the scrutiny of the nation's criminal law enforcement apparatus.

4. ICE has no published legal authorization for maintaining a watchlist of immigration attorneys and has offered no legitimate law enforcement justification. President Trump's March 22, 2025, presidential memorandum directing investigation of attorney misconduct did not authorize creation of a watchlist, and the watchlist does not correspond to any public list of attorneys sanctioned for immigration-related misconduct. The attorneys identified on the watchlist, including Professor Amarante and Al Otro Lado attorney Jeremy Jong, are in good standing with their respective state bars.

5. A secret government watchlist of attorneys implicates core First and Sixth Amendment values and strikes at the independence of the bar.

6. The Freedom of Information Act ("FOIA") requires ICE to proactively publish the policies and staff instructions governing this watchlist in its online FOIA reading room, without waiting to be asked. ICE has failed to do so, in violation of 5 U.S.C. § 552(a)(1) or (a)(2). Plaintiff Al Otro Lado, Inc. ("AOL") brings this action to compel that disclosure.

## PARTIES

7. Plaintiff Arlene Amarante, Esq. is an immigration attorney and former law professor practicing in Knoxville, Tennessee.

8. Defendant ICE is a component of the Department of Homeland Security ("DHS"), an 'agency' within the meaning of FOIA and bears primary responsibility for ensuring the Executive's compliance with FOIA and DHS's regulations implementing it, 6 C.F.R. 5.1 *et seq.*

9. ICE keeps the responsive records sought in Washington, DC.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over Plaintiff's FOIA claims for prompt access to released records under 5 U.S.C. § 552(a)(3)(A) and affirmative disclosure of certain records under 5 U.S.C. § 552 (a)(1) and (a)(2) pursuant to 5 U.S.C. § 552 (a)(4)(B), the Administrative Procedures Act, 5 U.S.C. § 701 *et. seq.*, and U.S.C. § 1331 (federal question) and 28 U.S.C. § 1391(e) (federal agency).

11. This Court has jurisdiction to enjoin the agency from withholding agency records and order production of improperly withheld records. *See* 5 U.S.C. § 552(a)(4)(B) ("the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.")

12. As a jurisdictional matter, FOIA only permits an agency more time to complete a request if it can show exceptional circumstances and that it has been exercising due diligence in locating and processing requested records. *See* 5 U.S.C. § 552(a)(6)(C) ("If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.")

13. Venue is proper within this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## FACTS

3

**A. Law: FOIA's proactive disclosure provisions require Defendant to publish responsive records in the Federal Register or its online FOIA reading room.**

14.    Plaintiff brings this action to compel Defendant's compliance with its FOIA proactive disclosure obligations under § 552(a)(2) and §552(a)(1).

15.    FOIA "focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted).

16.    § 522(a)(2)'s original text required federal agencies to make certain records "available for public inspection and copying" on a proactive basis.0F0F[1] § 522(a)(2) thus became known as the "reading room" provision because "agencies historically met their § 522(a)(2) obligations by placing the appropriate records in a physical, public reading room." *Animal Legal Def. Fund v. U.S. Dep't of Agriculture*, 935 F.3d 858, 862 (9th Cir. 2019). FOIA was later amended to require online publication of § 552(a)(2) records.

17.    In relevant part, §552(a)(2) mandates proactive disclosure of the following categories of records:

> Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—

---

[1] *See* DOJ, *Department of Justice Guide to the Freedom of Information Act* (July 23, 2014), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/proactive-disclosures.pdf.

(A)final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

(B)those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

(C)administrative staff manuals and instructions to staff that affect a member of the public;

(D)copies of all records, regardless of form or format—

(i)that have been released to any person under paragraph (3); and
(ii)(I)that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or (II)that have been requested 3 or more times; and

(E) . . .”current indexes providing identifying information for the public as to any matter . . . . required by this paragraph to be made available or published . . . [including] a general index of the records referred to under subparagraph (D).

18.   Because § 552(a)(2) disclosure is mandatory, D.C. Circuit precedent permits a plaintiff to bring a § 552(a)(2) claim even without having first filed a corresponding subsection (a)(3) FOIA request for those records. *See, e.g., Al Otro Lado, Inc. v. Immigration And Customs Enforcement*, 1:23-cv-01525, (D.D.C. Dec. 19, 2023) (minute order recognizing that an (a)(2) lawsuit does not require an initial FOIA request under (a)(3)) (quoting *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1240 (D.C. Cir. 2017) (“[A] plaintiff may bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records under section 552(a)(3).”).1F1F[2]

---

[2] *See also Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972) (“[T]he opinions and orders referred to in Section 552(a)(2), when properly requested, are required to be made available, and ... such requirement is judicially enforceable without further identification under Section 552(a)(3), even though the agency has failed to make them available as required by Section 552(a)(2).”)

19. D.C. Circuit precedent forbids a court from ordering an agency to publish records online to fulfil its § 552(a)(2) obligations.2F2F[3]

20. However, nothing "prevents a district court from, consistent with section 552(a)(4)(B), ordering an agency to provide to the plaintiff documents covered by the reading-room provision."3F3F[4]

21. § 552(a)(2) governs the publication of only some agency policies or rules. The other proactive disclosure provision governing agency policy publication is § 552(a)(1), which requires Federal Register publication of certain records, including:

> (C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;
> (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and
> (E) each amendment, revision, or repeal of the foregoing.

22. § 552(a)(1) also has an enforcement provision barring use of an unpublished record against a member of the public: "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published."

23. Defendant's unpublished records currently remain secret. FOIA demands publication of those records under one of the two proactive disclosure provisions. However, until

---

[3]*Id.* at 1243 (D.C. Cir. 2017) ("Given *Kennecott'*s construction of section 552(a)(4)(B), we think it clear that a court has no authority under FOIA to issue an injunction mandating that an agency "make available for public inspection" documents subject to the reading-room provision . . .").
[4] *Id.*

the records are made public, it cannot be determined whether the proper proactive disclosure provision is § 552(a)(1) or § 552(a)(2).

**B. President Trump's order to investigate suspected immigration attorney misconduct did not authorize ICE to create and maintain an immigration attorney watchlist.**

24. On March 22, 2025, President Donald Trump issued a presidential memorandum titled "Preventing Abuses of the Legal System and the Federal Court." The memorandum directs the U.S. Attorney General and the Department of Homeland Security to investigate and punish attorneys, particularly for bringing frivolous or unlawful immigration-related cases:

> Lawyers and law firms that engage in actions that violate the laws of the United States or rules governing attorney conduct must be efficiently and effectively held accountable. . . .The immigration system — where rampant fraud and meritless claims have supplanted . . . the United States Constitution — is likewise replete with examples of unscrupulous behavior by attorneys and law firms. For instance, the immigration bar . . . frequently coaches(?) clients to conceal their past or lie about their circumstances when asserting their asylum claims, all in an attempt to circumvent immigration policies enacted to protect our national security and deceive the immigration authorities and courts into granting them undeserved relief. . . .And this fraud in turn undermines the integrity of our immigration laws and the legal profession more broadly — to say nothing of the undeniable, tragic consequences of the resulting mass illegal immigration, whether in terms of heinous crimes . . . or the enormous drain on taxpayer resources intended for Americans.

25. The memorandum directs "the Attorney General to seek sanctions against attorneys and law firms who engage in frivolous, unreasonable, and vexatious litigation against the United States or in matters before executive departments and agencies of the United States" and that "the Attorney General and the Secretary of Homeland Security . . .

prioritize enforcement of their respective regulations governing attorney conduct and discipline."

26. The presidential memorandum does not supply data or examples supporting its claims of mass immigration attorney fraud.

27. If real, mass perpetration of fraud and ethical misconduct by immigration attorneys would inarguably be a topic of great national concern, particularly to immigration attorneys and nonprofit organizations dedicated to representing immigrants.

28. To date, neither the Attorney General nor DHS has so far publicly presented evidence of deliberate, calculated fraud as a common immigration attorney practice.

### C. The Discovery of the ICE-ERO Attorney Watchlist Database.

29. ICE launched its Detention Facility Appointment Scheduler ("DFAS") platform in September 2025. DFAS allows legal representatives to schedule in-person or virtual visits with clients held in immigration detention. Registering for a DFAS account requires legal representatives to upload government-issued identification and professional credentials.

30. In early November of 2025, Plaintiff discovered an attorney watchlist database while attempting to use the DFAS portal on her phone to schedule a meeting with a detained client. The watchlist database was accessible via the DFAS platform at eroefile.ice.gov. *See* Exhibit 1 ("Amarante Declaration").

31. The watchlist database bears the title "Watch list." Because the watchlist database is created by ServiceNow software, "watch list" can be a generic name for a user registry.

32. "Watchlist" is also a law enforcement term of art with a definite meaning: a list or database of individuals suspected of criminal or terrorist activity or otherwise marked for additional law enforcement scrutiny, such as the Interpol Terrorism Watch List or the U.S. Central Terrorist Watchlist.

33. According to experts, does it contain sufficient information to constitute a generic internal user registry: online multiuser systems maintain account directories recording user information such as account name, permission level, role, and account creation and log-in dates. The ICE-ERO watchlist database includes only names and email addresses.

34. Using the watchlist database search bar, Professor Amarante searched for her own name and found that she was included.



35. Al Otro Lado immigration attorney Jeremy Jong was also included on the watchlist database.



36.    Neither Professor Amarante nor Mr. Jong have any reason to be suspected of criminal activity or ethical infractions. Professor Amarante has been a member in good standing of the New York state bar since 2012 and has no record of ethical violations. Mr. Jong has been a member in good standing of the New Jersey state bar since 2014.

37.    The watchlist database is not an exhaustive directory of all DFAS users.

38.    The ICE-ERO watchlist database is not a list of immigration attorneys sanctioned for misconduct before an immigration court. The Department of Justice maintains this list on a regularly updated public website. The DOJ list names every attorney found to have committed misconduct, the nature of the misconduct, and the date of the offense.4F4F[5]

---

[5] https://www.justice.gov/eoir/list-of-currently-disciplined-practitioners.

The ICE-ERO watchlist database does not overlap with the DOJ immigration misconduct list.

39.    The database appears to be comprised exclusively of immigration attorneys or legal professionals.

**D. Defendant rejected Plaintiff's first FOIA letter, filed December 5, 2025.**

40.    On December 5, 2025, Plaintiff's counsel filed a first FOIA letter alerting ICE to its failure to proactively publish records pertaining to its attorney watchlist database.

41.    This first FOIA letter contained an affidavit from Plaintiff describing her discovery of the ICE-ERO watchlist database, her search of it, and supporting screenshots.

42.    The first FOIA letter outlined the reputational harm ICE would suffer should it either be maintaining an immigration attorney watchlist or otherwise fail to dispel suspicion that it maintained an immigration attorney watchlist. The letter suggested that ICE could prevent any reputational harm by simply publishing a policy indicating that the watchlist database was an internal database used for information system purposes.

43.    On December 16, 2025, ICE rejected Plaintiff's first FOIA letter, claiming that it failed to sufficiently describe the records sought.

**E. Plaintiff's second FOIA letter documented the watchlist database's capacity to interface with other federal criminal law enforcement agencies.**

44.    Plaintiff originally sought to limit full public dissemination of all known information to provide Defendant an opportunity to explain the watchlist database's existence and purpose without exposing what might be sensitive law enforcement information.

11

45.    After rejection of the initial FOIA letter, Plaintiff sent Defendant a second FOIA letter on December 22, 2025, a letter not publicly shared due to its inclusion of potentially sensitive law enforcement information.

46.    The second FOIA letter contained two previously omitted screenshots. The first screenshot showed that the only API user was "e2c2_apiuser."



47.    As the second FOIA letter explained "e2c2" refers to:

> Export Enforcement Control Center ("E2C2"), a program within ICE HSI. According to itself, E2C2 "leads a whole-of-government approach to export enforcement by ensuring interagency coordination, facilitates multi-agency collaboration, minimizes duplication of efforts, and strengthens the critical links between law enforcement, the intelligence community, and the export licensing agencies."5F5F[6]

---

[6] United States Immigration and Customs Enforcement, "Export Enforcement Coordination Center," UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (last visited

. . . there would be no reason for E2C2, ICE HSI's interagency criminal law enforcement communications node, to have access to a watchlist of immigration attorneys.

Yet as shown by the red box in the photo below, E2C2 is the only API ("Application Programming Interface") user on the ICE-ERO watchlist database.

According to consulted IT experts, a ServiceNow API user is a nonhuman agent or account permitting external systems to independently interact with ServiceNow records. E2C2 did not create this list—additional research indicates that the list was created by harvesting data from attorney emails to ICE. Instead, the E2C2 API user is likely a data pipeline capable of transferring watchlist database information as E2C2 sees fit.

48.   There is no readily available reason for why the representation of civilly detained immigrants would require the involvement of ICE's criminal law enforcement arm, HSI, or E2C2, HSI's platform for communicating with other law enforcement.

49.   Whatever the purpose, the watchlist database is networked such that "e2c2_apiuser" can easily communicate with other federal law enforcement agencies, as illustrated by the following screenshot:

---

December 18, 2025), https://www.ice.gov/about-ice/hsi/centers-labs/e2c2. *See also* Exec. Order 13558, 75 Fed. Reg. 69,573 (Nov. 15, 2010) (creating E2C2 and describing its functions).

9:46

**E2C2 Agency Response**

| Response Pending from USPIS | Response Pending from ATF | Response Pending from CBP | Response Pending from DDTC |
|---|---|---|---|
| Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. |
| Response Pending from DCIS | Response Pending from BIS | Response Pending from DIA | Response Pending from DCSA |
| Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. |
| Response Pending from EXIM | Response Pending from FBI | Response Pending from HSI | Response Pending from NASA |
| Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. |
| Response Pending from NCIS | Response Pending from OFAC | Response Pending from Other | Response Pending from Army- |
| Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. | Access to this content denied based on extra security on READ ACLs. |

Response Pending from AF-O!

Access to this content denied based on extra security on READ ACLs.

  eroefile.ice.gov

50. According to consulted IT experts, this screenshot shows a ServiceNow interface, titled "E2C2 Agency Response." This interface allows the federal law enforcement agencies pictured to provide additional information regarding the watchlist database's entries, i.e., the named immigration attorneys.

51. These federal law enforcement agencies pictured above include the Federal Bureau of Investigation, Homeland Security Investigations, the U.S. Postal Inspection Service, the Bureau of Alcohol, Tobacco and Firearms, the Army Office of Special Investigations, the Defense Counterintelligence, Security Agency, the Defense Intelligence Agency, and others.

52. Immigration attorneys have no regular dealings with any of these criminal law enforcement agencies. All immigration proceedings are adjudicated by the Department of Justice's Executive Office for Immigration Review.

53. There is no plausible reason for E2C2, ICE's interagency criminal coordination node, to share a watchlist of civil immigration attorneys with the FBI, ATF, Army Criminal Investigators, or other law enforcement agencies.

54. All licensed attorneys, including immigration attorneys, are subject to strict ethical guidelines and ongoing professional vetting by their licensing state bar. There are no reasonable security or law enforcement concerns justifying a law enforcement watchlist targeting licensed attorneys who have not been accused of misconduct. Attorney licensure is a state concern outside the reach of federal authorities.

55. Defendant responded to Plaintiff's second FOIA letter, assigning it the case number 2026-ICFO-09442, yet now construing it as a request to "to publish the complete allege attorney watchlist database."

**F. DHS Has Previously Used Secret Attorney Watchlists to Target Immigration Advocates.**

56. The ICE-ERO attorney watchlist database appears to continue a prior DHS practice of watch listing attorneys deemed to be political threats. In October 2018, as part of "Operation Secure Line," Customs and Border Protection compiled a secret watchlist of sixty-seven attorneys, journalists, and organizers linked to a migrant caravan heading to the U.S. border.

57. AOL attorneys and executive staff were included on that watchlist, resulting in CBP interrogations, denied border crossings, and attempted interference with AOL attorney-client relationships. That watchlist was only revealed after a DHS employee provided documentary evidence to a San Diego news outlet.

58. The ICE-ERO attorney watchlist database appears to be a continuation and expansion of that prior practice, now implemented through a formal enterprise IT system with interfaces to the broader federal criminal law enforcement community.

59. Reports from attorneys on this most recent watchlist database report DHS attempts to harass them or interfere with the attorney-client relationship.

60. Plaintiff, having made the FOIA notifications through counsel, and the D.C. Circuit remedy being disclosure to the notifying party, has suffered an informational injury by Defendant's failure to provide her with the records described above.

16

61.     Moreover, as a licensed professional of good name, Plaintiff suffers a harm by having her name included on a watchlist of immigration attorneys deserving of greater government scrutiny and surveillance. Only by disclosing the policy underlying the watchlist may Plaintiff then know whether she is in fact on a security watchlist or whether the watchlist in question was merely a benign part of Defendant's online infrastructure.

62.     By not disclosing the policy, Defendant stifles Plaintiff's professional activities. She has committed no violation deserving of additional government scrutiny. Without understanding whether she has garnered additional scrutiny or the meaning of that scrutiny, Plaintiff has no way to avoid ill effects—including reputational damage—flowing from her inclusion on the watchlist. *See Meese v. Keene,* 481 U.S. 465, 473 (1987) (determining that a plaintiff has standing where the threat of government enforcement would harm professional reputation).

### G. Defendant Has Failed to Publish Any Responsive Records.

63.     FOIA's proactive disclosure provisions are not optional: an agency must publish all non-exempt records in either the agency reading room or the Federal Register.

64.     Plaintiff has given the Defendant ample opportunity to explain that the watchlist database at issue here is in fact merely a benign facet of website infrastructure accidentally left exposed during website construction.

65.     Defendant has provided no explanation and published no responsive records.

66.     Defendant has not claimed that the responsive records are exempt from FOIA disclosure.

17

67.    On January 8, 2026, Defendant responded to Plaintiff's second FOIA letter, construing it as a request for "the complete allege[sic] attorney watchlist database."

68.    As of today, Defendant has published no responsive records.

**H. § 552(a)(1) requires Federal Register publication of the attorney watchlist database's Privacy Act SORN.**

69.    Defendant has failed to publish a System of Records Notification ("SORN") in the Federal Register, as required by the Privacy Act, 5 U.S.C. § 552a(e)(4), pertaining to its attorney watchlist database, which qualifies as a system of records.

70.    Specifically, § 552a(e)(4) requires Defendant to:

> publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include—
>
> (A) the name and location of the system;
>
> (B) the categories of individuals on whom records are maintained in the system;
>
> (C) the categories of records maintained in the system;
>
> (D) each routine use of the records contained in the system, including the categories of users and the purpose of such use;
>
> (E) the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records;
>
> (F) the title and business address of the agency official who is responsible for the system of records;
>
> (G) the agency procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him;
>
> (H) the agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content; and
>
> (I) the categories of sources of records in the system.

71. As stated above, § 552(a)(1) requires proactive Federal Register publication of "the methods whereby, the public may obtain information, make submittals or requests . . . statements of the general course and method by which its functions are channeled and determined . . .instructions as to the scope and contents of all papers, reports, or examinations" and "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency."

72. A SORN expressly includes information covered by § 552(a)(1), including "policies and practices of the agency regarding storage," notification procedures, and "agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content." § 552a(e)(4)(E), (G), (H).

73. Therefore, Defendant is required to have proactively published the attorney watchlist database SORN in the Federal Register or have done so in response to Plaintiff's letter alerting Defendant of its proactive publication deficiencies.

74. On June 9, 2026, Plaintiff sent her second FOIA letter to Defendant yet again, this time specifying that the records at issue also included § 552(a)(1) proactive publication records, such as the missing SORN.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF 5 U.S.C. § 552(a)(2)

75. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

76. Congress requires mandatory online publication of certain agency records under § 552(a)(2), including statements of policy and interpretations not published in the Federal Register, and administrative staff manuals and instructions to staff that affect a member of the public.

77. Plaintiff twice notified Defendant of its failure to publish records governing the ICE-ERO attorney watchlist database. Defendant denied the first notification and has not responded to the second.

78. The policies and staff instructions governing the watchlist database—including records describing its creation, intended purpose, and inclusion criteria—qualify in part or in whole as § 552(a)(2) records that Defendant is required to publish in its online FOIA reading room.

79. Under § 552(a)(2), Plaintiff is entitled to declaratory and injunctive relief requiring Defendant to disclose to Plaintiff all § 552(a)(2) records concerning the ICE-ERO attorney watchlist database, including all policies, staff manuals, instructions to staff, and final agency orders or opinions concerning the watchlist's creation, operation, purpose, and inclusion criteria.

80. Alternatively, Defendant may voluntarily publish these records to its online FOIA reading room in an appropriately indexed manner.

## COUNT II: VIOLATION OF 5 U.S.C. § 552(a)(1)

81. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if fully set forth herein.

82.    Congress requires mandatory Federal Register publication of certain records under § 552(a)(1), including:

> (B) statements of the general course and method by which its functions are channeled and determined . . . (C) rules of procedure . . . and instructions as to the scope and contents of all papers, reports, or examinations; (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency.

83.    § 552a(e)(4) of the Privacy Act likewise requires Federal Register publication of the policies and procedures underlying systems of records such as the attorney watchlist database.

84.    Plaintiff's letters alerted Defendant of its failures to proactively publish the records underlying its attorney watchlist database.

85.    Those records qualify, in whole or in part, as required Federal Register publications under § 552(a)(1).

86.    Under § 552(a)(1), Plaintiff is entitled to declaratory and injunctive relief requiring Defendant to properly publish any responsive records covered by § 552(a)(1) in the Federal Register.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Enter judgment on all counts in favor of Plaintiff and against Defendant.

2.    Determine whether Defendant was required to publish the responsive records under § 552(a)(1) or § 552(a)(2).

21

3.   Declare Defendant's failure to publish responsive records unlawful and order Defendant to produce, within twenty (20) days of the Court's order, or by such other date as the Court deems appropriate, all responsive records under both § 552(a)(1) and (a)(2) concerning its attorney watchlist database.

4.   Declare that, as provided in § 552(a)(1) and § 552(a)(2) respectively, any previously unpublished records either cannot be used to adversely affect a member of the public or that any unpublished record affecting a member of the public may not be relied on, used, or cited as precedent by an agency against a party other than an agency absent actual and timely notice to the affected party.

5.   Award Plaintiff reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

6.   Award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Respectfully submitted this June 9, 2026.

/s/ Andrew Fels
Andrew Fels
TN0025 (TN 36005)
*Al Otro Lado*
3214 Fountain Park Blvd.
Knoxville, TN 37917
(865)-567-4881
andrew@alotrolado.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2026, the foregoing was filed electronically through ECF/CM. On this same date, electronic service will be made to all counsel of record through the Court's ECF/CM system.

/s/ Andrew Fels
Andrew Fels
TN0025 (TN 36005)
*Al Otro Lado*
3214 Fountain Park Blvd.
Knoxville, TN 37917
(865)-567-4881
andrew@alotrolado.com